Filed: 3/29/2023 12:43 PM
Marci A. Gilbert
District Clerk
Cooke County, Texas
Debrielle Boggs

NO. _____CV23-00102_____

| | |
|---|---|
| TIM VANGEE, individually, and on behalf of all others similarly situated, | **IN THE DISTRICT COURT OF** |
| Plaintiff, | **COOKE COUNTY, TEXAS** |
| FCA US LLC and STELLANTIS N.V., | |
| Defendants. | **235th JUDICIAL DISTRICT** |

## CLASS ACTION COMPLAINT

Plaintiff Tim VanGee, by and through his attorney, files this action on behalf of himself and all others similarly situated against Defendants FCA US LLC and Stellantis N.V. (collectively, "Defendants" or "FCA"), and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of a class of Texas residents (collectively referred to herein as "Class Members"), for the benefit and protection of owners and lessees of model year 2017-2018 Ram 2500s and 2017-2018 Ram 3500s (collectively, the "Vehicles" or "Class Vehicles").

2.      As alleged herein, the Class Vehicles are unsafe and defective. The Vehicles have dangerous and defective hydraulic control units ("HCU") and anti-lock braking system ("ABS") modules that cause the ABS, cruise control, and traction control systems to become inoperable (the "Defect"). The Defect is due to defective materials used in the ABS and HCU. Without these systems, the Vehicles become more difficult to control and driving the Vehicles  becomes

especially dangerous in already dangerous road conditions, such as when the road is wet or snowy, as braking becomes much more difficult.

3.      Defendants knew or should have known about the Defect before selling the Vehicles to Plaintiff and Class members. Defendants perform rigorous pre-sale testing and received numerous consumer complaints relating to the Defect. Their knowledge of the Defect is evidenced by a Technical Service Bulletin ("TSB") regarding the faulty HCU and ABS.

4.      The Class Vehicles did not perform as warranted and Defendants omitted information about the Defect.

5.      Plaintiff and Class members were injured by Defendants' omissions, as they received Vehicles that were fundamentally different from what they believed they were purchasing, and less valuable than was represented.

6.      Despite Defendants' knowledge of the Defect, they have failed to issue a recall or offer another remedy. This means that Class members with out-of-warranty Vehicles must choose between paying for the expensive replacement of the HCU and ABS modules or driving an unsafe vehicle.

7.      Plaintiff brings this action to obtain redress for citizens of Texas who purchased Class Vehicles. Plaintiff seeks remedies for Defendants' violation of applicable laws of the state of Texas, breach of implied warranties, fraud, and unjust enrichment, and seek declaratory and injunctive relief to prevent Defendants' continued misconduct.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action because Plaintiff is a resident and citizen of the State of Texas.

9.      The subject matter and amount in controversy are within the jurisdictional limits of this Court. The Texas Rules of Civil Procedure requires that Plaintiff plead, pursuant to Rule 47 of the Texas Rules of Civil Procedure, that Plaintiff seeks monetary relief over $1,000,000, an amount within the jurisdictional limits of this Court. Plaintiff further seeks all other relied to which plaintiff and the Class may be shown to be justly entitled.

10.    On information and belief, more than two-thirds of the Class are citizens of the State of Texas.

11.    Venue is proper in this Court because Plaintiff resides in Grayson County, Texas and has had his Class Vehicle serviced at a Dodge dealership within this District. Defendants have marketed, advertised, sold, and leased Class Vehicles within this District.

## PARTIES

### Plaintiff Tim VanGee

12.    Plaintiff Tim VanGee resides in Gainesville, Cooke County, Texas. Plaintiff VanGee owns a 2018 Ram 2500 with approximately 47,000 miles on the odometer. Plaintiff VanGee purchased his vehicle new on or about September 2017. Plaintiff has had his vehicle serviced at Glenn Polk Chrysler Dodge Jeep Ram Fiat in Gainesville, Texas.

13.    Before purchasing his Vehicle, Plaintiff VanGee compared the vehicle to other similar pickup trucks. Plaintiff VanGee saw no representations from Defendants that his vehicle contained a defect that would result in the malfunction of his ABS, cruise control, and traction control.

14.    Had Defendants disclosed the Defect on their website, through their dealership, in their warranty manual, or elsewhere prior to Plaintiff VanGee purchasing his Vehicle, Plaintiff VanGee would not have made the purchase, or would have paid less for the Vehicle. As a result, Plaintiff VanGee received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

### Defendant FCA US LLC

15.    Defendant FCA US LLC is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan. Defendant FCA US LLC designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers, distributors, and other agents, the Class Vehicles in Texas to Plaintiff and Class members.

16.    FCA US LLC's authorized dealers are agents of FCA US LLC. This agency is factually supported by at least the following: 1) FCA US LLC issues TSBs to its dealership relating to common issues

in its vehicles, including a TSB relating to the Defect; 2) FCA US LLC's warranty directs Class Vehicle owners to present their vehicles to FCA US LLC's authorized dealerships for repairs; and 3) FCA US LLC requires dealerships to submit detailed data to it regarding repairs performed at dealerships.

**Defendant Stellantis N.V.**

17.    Defendant Stellantis N.V. is a Dutch corporation and is the parent company of FCA US LLC.

## SUBSTANTIVE ALLEGATIONS

18.    This action is brought against FCA on behalf of Plaintiff and all Texas residents who purchased or leased model year 2017-2018 Ram 2500 vehicles and 2017-2018 Ram 3500 vehicles.

19.    Defendants sell Class Vehicles to their authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiff and members of the Class, they purchase additional inventory from Defendants to replace the vehicles sold and leased, increasing Defendants' revenues. Thus, Plaintiff's and class members' purchases of Vehicles accrue to the benefit of Defendants by increasing their revenues.

### ABS and the Defect

20.    ABS is an important safety feature in vehicles that prevents wheel lock up during emergency braking or low traction situations—thereby helping prevent loss of driver control. The ABS system has sensors that monitor the deceleration of each wheel. If the deceleration occurs too rapidly, the other components of the ABS system work to control the

deceleration so that the wheel does not lock up.[1] The ABS module is also a necessary component of other critical safety features in the Vehicles, such as traction control. Below is a diagram of an ABS system[2]:



21.     Defendants' defective ABS module and HCU causes intermittent failure of the Vehicles' ABS.

22.     ABS is a critical safety feature in the Vehicles. Without the ABS, braking can become more difficult, especially in situations where brakes need to be applied quickly. Failure of the ABS module will also result in other connected systems to fail, such as cruise control and traction control.

23.     FCA has produced a TSB regarding the Defect. The TSB lists the "Symptom/Vehicle Issue" as "C0020-01-ABS PUMP MOTOR CONTROL – GENERAL ELECTRICAL FAILURE."[3] The current iteration of the TSB advises FCA's dealers that the HCU and the ABS module can be serviced as separate components.[4] An earlier version of the TSB directed dealers to replace the HCU first, test drive the vehicle, and, if after the

---

[1]     Karim Nice, *How Anti-Lock Brakes Work*, HOWSTUFFWORKS.COM, https://auto.howstuffworks.com/auto-parts/brakes/brake-types/anti-lock-brake.htm (last accessed May 19, 2022).

[2]     *Inside the Tech: Anti-Lock Braking System (ABS)*, MOTOR WORKS (Aug. 15, 2017), https://www.motor-works.com/blog/inside-the-tech--anti-lock-braking-system--abs-.

[3]     *Manufacturer Communication S2005000004 Rev. C*, NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., https://static.nhtsa.gov/odi/tsbs/2020/MC-10181550-9999.pdf (Last accessed May 20, 2022).

[4]     *Id.*

test drive the Vehicle still did not have a functioning ABS, to replace the electronic control unit.[5] The earlier version of the TSB also noted that the ABS module was "on parts restriction through the STAR Center."[6]

### Defendants' Internal Testing

24.     Defendants were aware of or should have been aware of the Defect in the Class Vehicles at the time they were selling the Vehicles to Plaintiff and Class members because of their rigorous internal testing coupled with their past experience and expertise in designing automobiles.

25.     Defendants perform extensive durability testing on their vehicles before the vehicles are sold. FCA notes that "[s]ome of the most punishing vehicle tests at [the Chrysler Technology Center] involve the Road Test Simulator (RTS), also known by its well-earned nickname [] 'The Shaker.'"[7] FCA continues, "[The Road Test Simulator] recreates the abuse vehicles endure at the hands of a 95th percentile customer – meaning a customer who drives the vehicle in more severe conditions than 95 percent of all drivers. The Shaker mimics a wide range of on-road and off-road driving surfaces and puts a lifetime of wear and tear on a vehicle in only one month's time."[8] FCA also states that it conducts "thousands of simulated and laboratory tests" at the Chrysler Technology Center and more tests at proving grounds across the world.[9]

26.     FCA also employs a test fleet of vehicles to test reliability. FCA claims, "Reliability test fleet vehicles are driven day and night on all kinds of public road surfaces, at high and low altitudes and through blizzard conditions, as well as dry, desert heat and hot, humid locations all over the globe."[10]

27.     In addition, Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of these standards necessarily

---

[5]     *RAM TSB S2005000004*, TSBSEARCH, https://www.tsbsearch.com/RAM/S2005000004 (last accessed May 20, 2022).

[6]     *Id.*

[7]     *Quality is Everyone's Mission at FCA US LLC*, STELLANTIS (August 31, 2015), https://media.stellantisnorthamerica.com/newsrelease.do?id=16717&mid=.

[8]     *Id.*

[9]     *Id.*

[10]     *Id.*

requires Defendants to extensively test its vehicles prior to selling them. Specifically, 49 CFR § 571.105 provides requirements for hydraulic and electric brake systems. Before selling the Vehicles, FCA was required to ensure that the ABS worked properly.

28.    During the course of these and other quality validation testing conducted by their engineers prior to their sale, Defendants became aware of the Defect.

### NHTSA Complaints and Other Consumer Complaints

29.    That Defendants knew of or should have known of the Defect is also evidenced by the many NHTSA consumer complaints and complaints on web forums regarding the Defect.

30.    The prevalence of these consumer complaints provides evidence that Defendants knew of, or should have known of, the Defect prior to selling the Vehicles. Because the Defect is so widespread among the Vehicles and so many consumers' Vehicles are experiencing the Defect, the Defect is even more likely to have manifested during Defendants' pre-sale testing of the Vehicles.

31.    Defendants specifically monitor customers' complaints made to NHTSA. Federal law requires automakers like Defendants to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

32.    Complaints of the Defect in the Vehicles date back to at least October 29, 2018. Below are some examples of complaints from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website[11]:

---

[11]    NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., *Safety Issues & Recalls*, https://www.nhtsa.gov/recalls#vehicle (last accessed May 19, 2022).

October 29, 2018 NHTSA ID NUMBER: 11143741 

## Components: ELECTRONIC STABILITY CONTROL, SERVICE BRAKES

**NHTSA ID Number:** 11143741

**Incident Date** October 15, 2018

**Consumer Location** MEANSVILLE, GA

**Vehicle Identification Number** 3C6UR5DL8HG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | MY ABS TRACTION CONTROL LIGHT CAME ON |
| FIRE | No | INTERMITTENTLY PRIOR TO 36,000 MILES. TOOK TO DEALER AND THEY COULD NOT FIND PROBLEM. WITH 42,600 MILES |
| INJURIES | 0 | LIGHTS HAVE COME ON AND SET A CODE. RAM HAS SAID THEY WILL NOT FIX THE PROBLEM. A COMPUTER HAS |
| DEATHS | 0 | FAILED. THIS IS A SAFETY ISSUE AND SHOULD BE CORRECTED BY RAM. I DON'T KNOW IF THIS IS A |

CONTINUING PROBLEM IN THESE TRUCKS OR IF FAULTY PARTS WERE PLACED ON MINE. I WANT THIS ISSUE DULY NOTED. THE FAILED PARTS ARE THE ABS MODULE AND THE HYDRAULIC CONTROL UNIT. RAM HAS TOLD ME THAT THIS IS MY PROBLEM WHEN IT IS IN FACT THEIR PROBLEM WHICH THEY WILL NOT TAKE CARE OF.

**1 Affected Product ▾**

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 2500 | 2017 |

July 14, 2019 NHTSA ID NUMBER: 11231734

**Components: VEHICLE SPEED CONTROL, ELECTRONIC STABILITY CONTROL, SERVICE BRAKES**

⊖

**NHTSA ID Number:** 11231734

**Incident Date** June 26, 2019

**Consumer Location** MOUNT JULIET, TN

**Vehicle Identification Number** 3C6UR5CL7HG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | JUNE 26TH 2019 MY TRUCK FELT LIKE IT SHIFTED INTO 4WD ON ITS OWN, LATER THAT DAY I LOST ABS, TRACTION CONTROL AND CRUISE CONTROL. IT WENT TO THE DEALERSHIP WHERE IT TOOK 3 DAYS TO DIAGNOSE. WAS INFORMED THAT ABS PUMP AND ABS CONTROL MODULE NEED TO BE REPLACED AND THE PART IS NOT CURRENTLY AVAILABLE. FURTHER RESEARCH OF INTERNET FORUMS SHOWS THIS IS A KNOWN PROBLEM AND DOES NOT APPEAR TO BE ADDRESSED PROPERLY. I AM STILL WAITING FOR MY TRUCK TO BE REPAIRED AND THERE IS A WARRANTY ON IT. DEALERSHIP ALLOWED ME TO PICKUP THE TRUCK WITHOUT THE REPAIR AND DID NOT PROVIDE RECEIPTS OR WORK ORDERS BECAUSE I DID NOT HAVE ANY OTHER TRANSPORTATION. IN HEAVY RAIN THE TRUCK HAS BECOME QUITE DANGEROUS TO DRIVE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product ▾**

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 2500 | 2017 |

September 2, 2019 NHTSA ID NUMBER: 11252781

## Components: ELECTRONIC STABILITY CONTROL, SERVICE BRAKES

**NHTSA ID Number:** 11252781

**Incident Date** August 28, 2019

**Consumer Location** HEPHZIBAH, GA

**Vehicle Identification Number** 3C6UR5HLXHG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | INTERMITTENT MIL FOR ABS AND ELECTRONIC BRAKING SYSTEM, BECAME MORE FREQUENT OVER 1-2 WEEKS WHILE WAITING FOR APPOINTMENT AT DEALERSHIP (OUT OF TOWN). DAY OF THE APPOINTMENT, MIL CAME ON AND STAYED ON. DEALER READ CODES AND STATED 'INTERNAL CODES FOUND, REPLACE PUMP AND MODULE' THEN INFORMED ME PARTS WERE ON 'NATIONAL BACKORDER' VEHICLE HAS 46,500 MILES AT TIME OF FAILURE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product ▾**

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 2500 | 2017 |

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11270492

**Incident Date** October 22, 2019

**Consumer Location** Unknown

**Vehicle Identification Number** 3C6UR5DL6JG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING TO WORK ON A STATE HIGHWAY THE BRAKES ON MY VEHICLE FAILED. THE VEHICLE IS 10 MONTHS OLD AND HAS ~8000 MILES ON IT. THE ABS ACTIVATED WHILE NOT APPLYING THE BRAKES. WHEN I STEPPED ON THE BRAKES TO SLOW THE SPEED OF THE VEHICLE, THE VEHICLE TOOK MUCH LONGER TO SLOW DOWN AND OR STOP. AFTER WHICH, THE ABS AND TRACTION CONTROL LIGHT CAME ON. THE LIGHT THEN BEGAN TO COME OFF AND ON WITHOUT A PATTERN. THE CAR WAS TAKEN TO THE DEALERSHIP AND THE ABS PUMP AND ABS CONTROL MODULE WERE REPLACED. THIS ISSUE OCCURRED WITHOUT WARNING. IF THE CONDITIONS HAD BEEN DIFFERENT, THIS LOSS IN BRAKING COULD HAVE CAUSED A SERIOUS ACCIDENT. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product ▾**

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 2500 | 2018 |

March 23, 2022 NHTSA ID NUMBER: 11458044

## Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL, SERVICE BRAKES

⊖

**NHTSA ID Number:** 11458044

**Incident Date** March 23, 2022

**Consumer Location** SALADO, TX

**Vehicle Identification Number** 3C6UR5CL7JG****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I have been having intermittent ABS/traction control lights flashing on my dash. When I hooked my truck up to my DTC code reader, it says I have a C0020-21 stored. ABS pump motorcontrol - general electrical failure. I have noticed thousands of complaints on various websites about the same issue. My truck only has 38,000 miles on it. This must be a defective part.....I called and asked my local dealership about this and they said its a very common issue. I believe it is a safety issue because it reduces the trucks ability to stop quickly, it may cause my truck to swerve in an emergency stop situation, and if this happens while the cruise control is on it turns the cruise control off unexpectedly. This happened to me in a bad rainstorm and caused my truck to swerve into the next lane over. I asked the dealer when they could get to repairing it and thy told me it would be months before they could repair it and it would cost approximately 1,800 dollars. They told me to just keep driving it with the error codes active. This is ridiculous. This part needs to be recalled because it affects thousands of vehicles and it is unsafe. My vehicle is available for inspection.

**1 Affected Product** ▾

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 2500 | 2018 |

**August 9, 2021** NHTSA ID NUMBER: 11428358     ⊖

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11428358

**Incident Date** August 7, 2021

**Consumer Location** DENISON, TX

**Vehicle Identification Number** 3C63RRKL8JG****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | The abs and tc lights came on and beeped. The message |
| FIRE | No | board said service abs. The brake pedal became spongy and unresponsive. I called a dealership and they stated they have |
| INJURIES | 0 | changed a bunch of hydraulic brake pumps on the ram pickup especially this year model. I asked is this a safety problem? |
| DEATHS | 0 | After hesitation he said yes. My other ram is doing the same thing and I know of another 2018 a friend had changed at 10,000 miles. |

**1 Affected Product** ▾

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 3500 | 2018 |

**February 22, 2022** NHTSA ID NUMBER: 11453424     ⊖

## Components: UNKNOWN OR OTHER, SERVICE BRAKES

**NHTSA ID Number:** 11453424

**Incident Date** November 1, 2021

**Consumer Location** LOMPOC, CA

**Vehicle Identification Number** 3c63rrjl0jg****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | ABS pump module failed with vehicle under 25K miles. Pump |
| FIRE | No | failed prematurely and failed while I was driving, disabling my ABS brakes. The ABS lights and check engine light did light up, |
| INJURIES | 0 | it has since been replaced and there is no recall on this issue. |
| DEATHS | 0 | Seems to be a common issue with FIAT Chrysler cars. |

**1 Affected Product** ▾

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 3500 | 2018 |

April 28, 2022 NHTSA ID NUMBER: 11462539

## Components: ELECTRICAL SYSTEM, VEHICLE SPEED CONTROL, SERVICE BRAKES

**NHTSA ID Number:** 11462539

**Incident Date** April 27, 2022

**Consumer Location** OAKLAND, CA

**Vehicle Identification Number** 3C63R3GL0JG****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The warning chirp occurred and the ABS and ESC lights came on the first two times. The incident happened so quickly I could not clearly determine which warning lights illuminated. On April 18 with just over 39,000 miles on the vehicle the chirping alarm and the ABS and ESC light illuminated. In addition two warnings appeared in the dash: "Service Antilock Brake System" and "Service Electronic Braking System." The warnings happened multiple times per minute in some cases. Other times the vehicle would go for many miles without the warning. Every time the warning chirp was heard the cruise control would disengage. I did not notice any problems with the brakes of the truck. In researching the issue I learned that many people are having this problem. I contacted Ram and they directed me to a dealer who diagnosed the C0020-01 fault code and that the hydraulic control unit (HCU) for the ABS system was defective. According the the TSB Ram has put out about the issue the ABS module could also be bad, but the first part of the repair it to replace the HCU and if the problem persists to then replace the ABS module. Ram apparently has an inconsistent level of support for owners experiencing this malfunction with some getting the repair done out of warranty, while others have to pay for the repair. Because it is brake related it seems this should be an item replaced as a safety issue, no matter what the mileage on the vehicle.

**1 Affected Product ▾**

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| RAM | 3500 | 2018 |

33.    But consumer complaints are not limited to NHTSA. Class members have also posted about the Defect on forums dedicated to the Subject Vehicles. One such forum topic, which was started on August 21, 2019, has over 245 posts discussing the Defect.[12] The topic includes posts from Ram customer support agents under the username "ramcares" and the account's posts note that the account is "[s]taffed . . . by the Stellantis Social Engagement team."[13] An example of one of the customer support posts is below[14]:



---

[12]    *Warnings About Service Electronic Brake System*, RAM FORUMZ, https://www.ramforumz.com/threads/warnings-about-service-electronic-brake-system.269449/ (last accessed May 19, 2022).

[13]    *Id.*

[14]    *Id.*

**Plaintiff's and Class Members' Injuries**

34.    To date, Defendants have not demonstrated that they are capable of providing an adequate repair for the Defect, and Plaintiff and Class members do not know whether Defendants are capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and Class members. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit.

35.    Plaintiff and Class members paid for Vehicles expecting that the Vehicles were not defective. Plaintiff and Class members are owed damages of the difference between the price that Plaintiff and Class members paid for the Vehicle and the price of the Vehicles with the Defect.

36.    In addition, Plaintiff and Class members have suffered out-of-pocket losses related to obtaining replacements of ABS and HCU modules, damage to the Vehicles or areas surrounding the Vehicle caused by the Defect, diminution in value of the Vehicles, costs associated with arranging and obtaining alternative means of transportation, and any other incidental and consequential damages recoverable under the law.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

37.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and Class members were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendants' deception with respect to the Defect and, certainly did not and could not, upon the exercise of reasonable diligence, have discovered the Defect and any cause of action against Defendants arising therefrom before the initial of the action filed against Defendants on May 26, 2022, *Wilson, et al., v. FCA US LLC, et al.,* Case No 4:22-cv-447 (E.D. Tex.).

38.    Plaintiff and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendants were concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was

material to Plaintiff and Class members at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and Class members could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendants were concealing the Defect.

39.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiff and Class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

40.    Defendants knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect. Plaintiff and Class members reasonably relied on Defendants' knowing, active, and affirmative concealment.

41.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations.

## **CLASS ACTION ALLEGATIONS**

42.    Plaintiff VanGee, individually, and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles, pursuant to Texas Rules of Civil Procedure Rule 42, seeks to represent the following class:

> All Texas residents who own, owned, lease, or leased model year 2017-2018 Ram
> 2500 vehicles or 2017-2018 Ram 3500 vehicles purchased or leased in the United
> States and its territories

43.    Excluded from the Class are Defendants, as well as Defendants' affiliates, employees, officers and directors, and the judge to whom this case is assigned. Plaintiff reserves the right to amend the definition of the classes if discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

44.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.    **Numerosity:** The members of each of the Class are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual members of each of the Classes is unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that thousands of purchasers of Class Vehicles reside in Texas.

46.    **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

a.    whether Defendants engaged in the conduct alleged herein;

b.    whether Defendants omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

c.    whether Defendants' omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

d.    whether Defendants breached implied warranties with Plaintiff and Class members when it produced, distributed, and sold the Class Vehicles;

e.    whether Plaintiff's and Class members' Vehicles were worth less than as represented as a result of the Defect and conduct alleged herein;

f.    whether Plaintiff and Class members have been damaged and, if so, the extent of such damages; and

g.    whether Plaintiff and Class members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief.

47.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other class members. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, are substantially overcome, in both quality and quantity, by the numerous common questions that dominate this action.

48.    **Typicality:** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. As with Plaintiff, Class members also purchased or leased a Class Vehicle containing the Defect. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other class members, and no defense is available to Defendants that is unique to Plaintiff. The same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in selling/leasing and failing to adequately remedy the Defect.

49.    **Adequacy:** Plaintiff is an adequate class representative because he will fairly represent the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Neither Plaintiff nor his counsel have any interest adverse or antagonistic to those of the class.

50.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for

inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to each class as a whole.

52.     Upon information and belief, Class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding their sales and leases of Class Vehicles.

53.     Unless the classes are certified, Defendants will improperly retain monies that they received from Plaintiff and Class members as a result of their conduct.

## CAUSES OF ACTION

### COUNT I
### Breach of the Implied Warranty of Merchantability
### (Brought on Behalf of Plaintiff and the Class)

54.     Plaintiff Tim VanGee and the Class reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

55.     Defendants are and were at all relevant times  merchants  with respect  to the Vehicles, and manufactured, distributed, warranted, and sold the Vehicles.

56.     A warranty that the Vehicles were in merchantable condition and fit for ordinary purposes for which they were sold is implied by law.

57.     Plaintiff and Class members purchased or leased the Vehicles manufactured and sold by Defendants in consumer transactions.

58.     The Vehicles, when sold and at all times thereafter, were not in merchantable condition and the HCU and ABS module were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendants' possession and control with defective HCU and ABS modules that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

59.    Defendants knew or should have known before the time of sale to Plaintiff and the other Class members, or earlier, that the Vehicles were produced with defective ABS modules that were unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with the Vehicles. This knowledge was based on Defendants' own industry standard internal validation of its vehicles prior to launching a new model, internal testing, knowledge about and familiarity with the ABS included in the Vehicles, and complaints by consumers and third parties.

60.    The existence and ubiquity of the Defect is illustrated by the numerous consumer complaints that Defendants received.

61.    Despite Plaintiff's and the other Class members' normal, ordinary, and intended uses, maintenance, and upkeep, the HCU and ABS modules of the Vehicles experienced and continue to experience the Defect.

62.    The defective HCU and ABS modules in the Vehicles and the Vehicles themselves are, and at all times and were, not of fair or average quality, and would not pass without objection.

63.    All conditions precedent have occurred or been performed.

64.    Plaintiff and Class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under Defendants' warranty, including presentment, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct described throughout this Complaint.

65.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

66.    In addition, upon information and belief, Defendants received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class.

67.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendants knew or should have known about prior to offering the Vehicles for sale or lease, and which Defendants did not disclose and did not remedy prior to (or after) sale or lease, is unconscionable, and Defendants should be estopped from pursuing such defenses. Defendants' warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendants knew or should have known when they first made these warranties and their limitations that the Defect existed, and the warranties might expire before a reasonable consumer would notice or observe the Defect. Defendants also failed to take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendants any more time to cure the Defect or cure its breaches of warranty.

68.    As such, Defendants should be estopped from disclaiming liability for their actions.

69.    Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiff and Class members had sufficient direct dealings with Defendants and their agents (dealers) to establish privity of contract. Defendants, on the one hand, and Plaintiff and Class members, on the other hand, are in privity because of FCA's New-Vehicle Limited Warranty, which Defendants extended to Plaintiff and Class members.

70.    Privity is also not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Defendants and their dealers (*i.e.*, Defendants' agents); specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only

the ultimate consumers—such as Plaintiff and Class members. Privity is also not required because Plaintiff's and Class members' Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

71.     As a result of Defendants' breaches of the implied warranty of merchantability, Plaintiff and Class members suffered and will suffer out-of-pocket losses related to obtaining replacements of ABS and HCU modules, damage to the Vehicles or areas surrounding the Vehicle caused by the Defect, diminution in value of the Vehicles, costs associated with arranging and obtaining alternative means of transportation, and any other incidental and consequential damages recoverable under the law.

## COUNT II
### Fraud/Fraudulent Omission
### (Brought on Behalf of Plaintiff and the Class)

72.     Plaintiff Tim VanGee and the Class reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

73.     Defendants actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiff and Class members rely on Defendants' omissions. As a direct result of Defendants' fraudulent conduct, as alleged herein, Plaintiff and Class members have suffered actual damages.

74.     Defendants knew or should have known at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect.

75.     Defendants possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

76.     The Defect is material to Plaintiff and Class members because Plaintiff and Class members had a reasonable expectation that the Vehicles would contain a non-defective ABS module and HCU. No reasonable consumer expects a vehicle to contain a concealed Defect in materials or workmanship, such as the Defect, as well as its associated safety risk.

77.     Plaintiff and Class members would not have purchased or leased the Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

78.     Defendants knew their concealment and suppression of the Defect was false and misleading and knew the effect of concealing those material facts. Defendants knew their misstatements, concealment, and suppression of the Defect would sell more Vehicles. Further, Defendants intended to induce Plaintiff and Class members into purchasing or leasing the Vehicles in order to decrease costs and increase profits.

79.     Plaintiff and Class members reasonably relied upon Defendants' knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendants' misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiff and Class members have suffered actual damages in an amount to be determined at trial.

**COUNT III**
**Unjust Enrichment**
**(Brought on Behalf of Plaintiff and the Class)**

80.     Plaintiff Tim VanGee and the Class reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

81.     This claim is pleaded in the alternative to Counts I and II set forth above.

82.     As a direct and proximate result of Defendants' omissions and its failure to disclose the known Defect, Defendants have profited through the sale and lease of the Vehicles. Although these Vehicles are purchased through Defendants' agents, the money from the Vehicle sales flows directly back to Defendants.

83.     As a result of its wrongful acts, concealments, and omissions of the Defect in its Vehicles, as set forth above, Defendants charged a higher price for the Vehicles than the Vehicles' true value. Plaintiff and Class members paid that higher price for their Vehicles to Defendants' authorized distributors and dealers, which are in Defendants' control.

84.    Additionally, as a direct and proximate result of Defendants' failure to disclose known Defect in the Vehicles, Plaintiff and Class members have Vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendants.

85.    Defendants have been unjustly enriched due to the known Defect in the Vehicles through the money paid that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiff and Class members.

86.    As a result of the Defendants' unjust enrichment, Plaintiff and Class members have suffered damages.

87.    Equity and good conscience militate against allowing Defendants to retain their ill- gotten gains, and requires disgorgement and restitution of the same.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, prays for judgment as follows:

a)    Certification of the Class under Rule 42 of the Texas Rules of Civil Procedure;

b)    Appointment of Plaintiff as representative of the Classes and his counsel as class counsel;

c)    Compensatory and other damages for economic and non-economic damages;

d)    An award of restitution and/or disgorgement;

e)    An injunction requiring Defendants to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f)    Statutory pre-judgment and post-judgment interest on any amounts;

g)    Payment of reasonable attorneys' fees and recoverable litigation costs and expenses as may be allowable under applicable law; and

h)    Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.


Dated: March 28, 2023.                          Respectfully submitted,

                                        By:    */s/ John Emerson*
                                               JOHN G. EMERSON State Bar # 06602600
                                               **EMERSON FIRM, PLLC**
                                               2500 Wilcrest, Suite 300
                                               Houston, TX 77042
                                               Telephone: (800) 551-8649
                                               Facsimile: (501) 286-4659
                                               jemerson@emersonfirm.com